Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**TIMOTHY P. BRODEN**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRAVIS WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1405-CR-314 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1305-FB-13

**January 14, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

Travis J. Wilson appeals his conviction by jury of Criminal Deviate Conduct as a Class B felony.[1]  We affirm.

Wilson raises two issues, which we restate as:

I.       Whether any error in the admission of an alleged evidentiary harpoon was harmless.

II.      Whether Wilson's sentence is inappropriate.

On May 24, 2013, following the last day of their freshman year in high school, J.O. and A.C., both fourteen years old, spent the night at the home of their friend, A.W., also fourteen years old.  Wilson, A.W.'s nineteen-year-old brother, invited four friends over for a night of drinking alcohol and playing drinking games such as beer pong and spin the bottle with Wilson's father around a fire pit in the backyard.  During the course of the evening, Wilson went into the house where the girls were watching television and "h[anging] out," and gave the girls what they thought was orange soda in red cups.  Tr. p. 47.

After drinking the orange soda, J.O. felt "weird."  *Id*. at 105.  Her face felt hot and her head "felt really like floating."  *Id*.  J.O. had never felt like this before.  Her friends noticed that she was acting "really crazy" as she began dancing around the room.  *Id*. at 51.  After it was clear to Wilson that J.O. was intoxicated, Wilson commented to his sister, "awe, [J.O.]'s a little drunk isn't she?"  *Id*. at 381.  At 1:46 a.m., Wilson texted his sister that J.O. was "cute."  State's Exhibit 39.

---

[1] Ind. Code § 35-42-4-2.  Repealed by P.L.158-2013, SEC.438 and P.L.214-2013, SEC.37, eff. July 1, 2014.

The three young ladies eventually went to sleep. A.W. slept on her bed, and J.O. and A.C. slept on the floor. At some point during the night, J.O. woke up to Wilson moving his finger in and out of her vagina. J.O. was able to identify Wilson because the door was open and there was a light from the hallway shining into the bedroom. J.O. jumped up on A.W.'s bed, and Wilson stood by the closet in A.W.'s bedroom for 20 to 30 minutes making a repeated noise as if he was rubbing his clothes. When Wilson left the room, J.O. locked the door and tried to wake up A.W. and A.C. Unsuccessful, J.O. went back to sleep.

The following morning, J.O. told the girls what had happened. A.W. said she would tell her dad, and A.C. texted her mother to pick up the two girls. While they were waiting for A.C.'s mother to arrive, Wilson's father apologized to J.O. When A.C.'s mother arrived, A.C. and J.O. got into the car. J.O was sobbing. Between sobs, she was able to tell A.C.'s mother that Wilson "had touched her." Tr. p. 37.

A.C.'s mother contacted J.O.'s mother, and they took J.O. to the hospital. During an examination, Sexual Assault Nurse Catherine Clark noticed abrasions on J.O.'s exterior genitals. Based on Nurse Clark's training and experience, such injuries are typically sustained through the "forcible prodding of an area." *Id.* at 235. Nurse Clark took swabs from J.O.'s genitals and collected J.O.'s underwear. Tippecanoe County Sheriff's Department Deputy Aaron Gilman was dispatched to Wilson's residence, where he found an orange soda bottle in the back yard on a table next to the fire pit. Tippecanoe County Sheriff's Department Detective Matthew Couch interviewed Wilson, who admitted to drinking wine coolers and an alcoholic beverage mixed with orange soda in a red cup. Wilson, however, denied giving alcohol to the girls or touching J.O.

The State charged Wilson with Criminal Deviate Conduct as a Class B felony, Sexual Misconduct with a Minor as a Class C felony, and Sexual Misconduct with a Minor as a Class D felony. At trial, the State introduced evidence that Amylase[2] consistent with that of Wilson or one of his male relatives was found on J.O's underwear and external genitals. There were no allegations that Wilson's father touched J.O.'s genitals or underwear.

Following the direct and cross examinations of Wilson's father, a juror submitted the following question: "On the morning after the night in question what exactly were you apologizing to [J.O.] about?" *Id.* at 357. Wilson did not object to the question, and Wilson's father responded as follows:

> She had told me about an incident occurring and I felt that - - I felt horrible that she felt something had happened and instantly I would try and comfort her and tell her I'm sorry. I mean I never – I never expected anything of that nature to be brought to my attention and I immediately felt obligated to comfort her and apologize.

*Id.*

Thereafter, the parties discussed an unrelated matter outside the presence of the jury. When the jurors returned to the courtroom, the following colloquy ensued:

> STATE: Sir you just responded to the juror[']s question and part of your response was that you were apologizing to [J.O.] because you felt horrible that she felt that something had happened[,] correct?
>
> WILSON'S FATHER: Correct.
>
> STATE: And previously you said you admitted that you had given the statement that [J.O.] had no reason to lie[,] correct?
>
> WILSON'S FATHER: Correct.

---

[2] Amylase is an enzyme found in the salivary glands. *See* MedicineNet.com. http://www.medicinenet.com/script/main/art.asp?articlekey=20630 (last visited on Dec. 29, 2014).

STATE: And did you also previously tell Detective Couch in my heart I think something happened?

*Id.* at 362-63.

Wilson objected, and the trial court conducted a side bar conference. Wilson moved to strike the State's question and requested a mistrial. The trial court apparently denied the mistrial while counsel were talking off the record. When the parties went back on the record, the State withdrew the question. The jury subsequently convicted Wilson of all three charges.

Evidence presented at the sentencing hearing revealed that Wilson had previously inappropriately touched his sister A.W., but it had not been reported to the police. J.O.'s mother testified that J.O.'s grades have dropped from A's and B's to D's and F's, she has lost some of the life in her eyes, she struggles with being alone, and she suffers from anxiety.

Following the presentation of evidence, the trial court noted that alcohol had been illegally consumed by nineteen-year-old Wilson, who then illegally provided alcohol to three fourteen-year-old girls, and committed a sexual offense against one of the girls in the presence and within the hearing of the two other girls. In addition, although defense counsel argued that Wilson had a good family support system, the trial court pointed out that Wilson's father was playing beer pong with Wilson and his friends that night. The trial court merged the Class C and D felonies with the Class B felony, and entered judgment of conviction on the Class B felony. The trial court then sentenced Wilson to thirteen years

with eleven years executed and two years on probation for the Class B felony. Wilson appeals his conviction and sentence.

Wilson first argues that the deputy prosecutor engaged in misconduct when she "injected an evidentiary harpoon into the proceedings when questioning Wilson's father in follow-up to a jury question." Appellant's Br. p. 5. An evidentiary harpoon is the placing of inadmissible evidence before the jury so as to prejudice the jurors against the defendant. *Perez v. State*, 728 N.E.2d 234, 237 (Ind. Ct. App. 2000), *trans. denied*. Here, however, we need not determine whether the deputy prosecutor injected an evidentiary harpoon into the proceedings because when the jury's determination is supported by independent evidence of guilt and it was likely that the evidentiary harpoon did not play a part in the defendant's conviction, any error is harmless. *See id.*

Our review of the evidence in this case reveals that nineteen-year-old Wilson gave fourteen-year-old J.O. alcohol mixed in orange soda for the purpose of intoxicating her. While J.O. was sleeping in a room with two other fourteen-year-old girls, she woke up to Wilson moving his finger in and out of her vagina. J.O. was able to identify Wilson because the door was open and the hallway light was shining into the bedroom. In addition, there was physical evidence such as the injuries on J.O's genitals which are typically sustained through the "forcible prodding of an area," and the presence of Amylase consistent with that of Wilson or one of his male relatives on J.O's external genitals and underwear. Tr. p. 235. In light of this independent evidence of guilt, it was likely that even if the State injected an evidentiary harpoon into the proceedings, this harpoon did not play a part in Wilson's conviction. Any error is therefore harmless. *See Perez*, 728 N.E.2d at 234.

6

Wilson also argues that his thirteen-year sentence is inappropriate. Specifically, he contends that his "sentence should be revised to the advisory term of ten (10) years with seven (7) years to be executed in the Department of Correction and three (3) years suspended to probation."[3] Appellant's Br. p. 11.

Article VII, section 4 of the Indiana Constitution authorizes independent appellate review of sentences. *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014). This review is implemented through Indiana Appellate Rule 7(B), which states that we may revise a sentence, even if authorized by statute, if after due consideration of the trial court's decision, the sentence is inappropriate in light of the nature of the offense and the character of the offender. In determining whether a sentence is inappropriate, this Court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Wilson bears the burden on appeal of persuading us that his sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

As to the nature of the offense, nineteen-year-old Wilson drank alcohol and gave fourteen-year-old J.O. enough alcohol to intoxicate her. When J.O. woke up in the middle of the night, Wilson was moving his finger in and out of her vagina in the presence of the other two fourteen-year-old girls. He then stood in the bedroom by the closet for 20 to 30 minutes making a repeated noise as if he was rubbing his clothes. Because of Wilson's actions, J.O.'s grades have dropped, she suffers from anxiety, and she struggles with being alone.

---

[3] The advisory sentence for a Class B felony is ten years, with a sentencing range of six to twenty years. Ind. Code § 35-50-2-5 (2005).

7

As to the character of the offender, we note that the significance of criminal history in assessing a defendant's character is based on the gravity, nature and number of prior offenses in relation to the current offense. *Moss v. State*, 13 N.E.3d 440, 447 (Ind. Ct. App. 2014), *trans. denied*. Even a minor criminal history is a poor reflection of a defendant's character. *Id.* at 448. Further, "Wilson does not dispute that a sentencing court may consider uncharged crimes in determining [his] character and risk that he will reoffend." *See Kent v. State*, 675 N.E.2d 332, 341 (Ind. 1996). Here, Wilson has a history of underage consumption of alcohol. He also inappropriately touched his sister A.W. although it was not reported. Considering the nature of the offense and Wilson's character, Wilson has not met his burden of proving that his sentence is inappropriate.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.